UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID A. HELTON,

    Petitioner,

v.                                       Case No. 15-C-924

WARDEN GARY BOUGHTON,

    Respondent.

## DECISION AND ORDER

Petitioner David A. Helton filed a petition for federal relief from his state conviction pursuant to 28 U.S.C. § 2254 on July 31, 2015. This matter is before the court on remand from the court of appeals to consider whether a stay should have been granted pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). On remand, Helton filed a motion to stay, which the court has since denied based on its consideration of the factors set out in *Rhines*. ECF No. 43. Upon denying the motion to stay, the court directed Helton to advise the court as to whether he wished to abandon his unexhausted claims and proceed on the exhausted claims or have his entire petition dismissed without prejudice with the likely result that a later petition would be time-barred. Rather than respond, Helton filed a notice of appeal. The court held a telephone conference on September 6, 2018, to address the status of the case. Having fully reviewed the record evidence and the arguments of the parties, for the reasons that follow, Helton's petition for a writ of habeas corpus will be denied and the case dismissed.

**BACKGROUND**

A Milwaukee County Jury found David A. Helton guilty of second-degree reckless homicide with a dangerous weapon in the shooting death of sixteen-year-old Shelton Smith on August 12, 2011. According to Helton's own version of events, sometime after 9:00 p.m. on May 2, 2011, he heard noise by his trailer door and believed someone was trying to break into his trailer, which was located in a scrap yard. He loaded his shotgun and went outside. After searching the area around his trailer, Helton concluded an animal had made the noise. Helton testified that at that point, he did not feel threatened and stopped to catch his breath. He then heard something to his left and saw someone near a warehouse door. Helton stumbled, which caused the gun to discharge. Helton testified he believed someone had been shot, and he had a hard time accepting that, so he went back into his trailer, grabbed the boxes of shells and loose slugs in his drawer, and threw the ammunition and weapon over the fence at the end of the lot. The shot had in fact struck and killed Smith, who had gone to the scrap yard with his cousins and an uncle to steal scrap metal. ECF No. 16-18 at 48–64. A jury found Helton guilty, and he was sentenced to twelve years of initial confinement and four years of extended supervision. He then appealed.

On May 1, 2013, Helton's appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32. Helton responded to the no-merit report, and counsel filed a supplemental no-merit report. The Wisconsin Court of Appeals summarily affirmed Helton's conviction. *See State v. Helton*, No. 2013AP801-CRNM, 2014 WL 12669354 (Wis. Ct. App. May 7, 2014). Helton's counsel filed a no-merit petition for review in the Wisconsin Supreme Court on May 20, 2014, and Helton filed a response. The Wisconsin Supreme Court denied the petition on August 4, 2014.

Helton filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 raising six grounds for relief. First, Helton lists twenty-eight ways in which his trial counsel was ineffective during trial. Second, Helton asserts trial counsel was ineffective in failing to bolster his credibility and raise certain affirmative defenses. Third, Helton asserts trial counsel was ineffective in failing to request proper jury instructions. Fourth, Helton claims that Wisconsin's reckless homicide statute is overly broad as applied to his case because it was used to nullify statutes which clearly allow for the defense of self and property. Fifth, Helton asserts trial counsel was ineffective in failing to provide discovery photographs to him. Sixth, Helton claims that the State failed to present any direct or circumstantial evidence that contradicted his testimony.

The court initially screened the petition on September 4, 2015. Although the court allowed Helton to proceed on all six claims, it noted that the issue of whether Helton exhausted his state remedies remained unclear. The court directed the respondent to answer the petition or file an appropriate motion seeking dismissal. The respondent filed an answer to the petition on December 18, 2015, and asserted that Helton had failed to fully exhaust all of his claims in state court. The court subsequently allowed Helton the opportunity to reply to the respondent's answer by January 15, 2016, and address whether he had fairly presented most, if not all, of the approximately 28 sub-issues raised in the first ground of his petition in state court. The court directed Helton to either abandon the unexhausted claims or the court would dismiss the petition without prejudice so that Helton may exhaust all of his claims in state court.

The court granted Helton's first request for an extension of time to file a reply by March 1, 2016, and his second request for an extension until April 15, 2016. In the latter order, the court advised Helton that "[n]o further requests for an extension of time by Petitioner will be granted." ECF No. 20. Despite the court's warning, Helton filed a third motion for an extension of time on

3

April 14, 2016. The court denied Helton's request and proceeded to decide the case on the basis of the record as it then stood. The court found that Helton had filed a "mixed petition" that contained many unexhausted claims and dismissed the action without prejudice so that Helton could exhaust his state court remedies.

Helton appealed. While the appeal was pending, the parties filed a joint motion to remand the case to the district court to determine whether to stay the proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005). The court of appeals granted the motion and remanded the case for further proceedings.

Upon remand, the court instructed Helton to file a motion to stay addressing the *Rhines* factors. Helton subsequently filed a motion to stay on February 2, 2018. The respondent filed a response to the motion on March 20, 2018, and Helton did not file a reply. The court denied Helton's motion to stay on May 22, 2018, and directed Helton to advise the court as to whether he wished to abandon his unexhausted claims and proceed on the exhausted claims or have his entire petition dismissed without prejudice with the likely result that a later petition would be time-barred. Rather than respond, Helton filed a notice of appeal. The court held a telephone conference on September 6, 2018, to address the status of the case. Helton did not indicate whether he sought to dismiss his unexhausted claims or wanted the court to dismiss his petition without prejudice and maintains that the court should consider his petition in its entirety.

## ANALYSIS

The thrust of Helton's argument is that trial counsel provided ineffective assistance because he did not advance theories of defense of self or property and did not introduce copies of Helton's medical records to support Helton's theory that he suffered a minor cardiac event at the time of the

4

shooting. But these theories do not fit with Helton's convoluted version of the events. Again, Helton did not testify that he felt frightened or threatened as he searched his property or that he intentionally fired the weapon, which would support a theory of defense of self or property. Instead, he claimed that he stumbled, which caused the gun to discharge. And although Helton's hospital record was not introduced as evidence at trial, the jury was told that Helton was transported to the hospital after the shooting and remained there overnight until early evening on the following day. ECF No. 16-18 at 77–78. Given his admitted behavior during and immediately after the shooting, it is not clear what relevance the hospital records would have had. Helton testified that his treatment consisted of being given an inhaler and instructed to take baby aspirin. *Id.* at 78. But before turning to whether Helton has established that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, the court must address the issue of the unexhausted claims contained in Helton's petition.

As the court noted in its order denying Helton's motion to stay, a petitioner must raise and exhaust all of his constitutional claims in state court before filing a federal habeas petition that challenges his state court conviction. *See Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). In determining whether to issue a stay and hold a habeas petition in abeyance, a court must consider (1) whether the petitioner had good cause for his failure to exhaust; (2) whether the unexhausted claims are potentially meritorious; and (3) whether the petitioner engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 278. In this case, Helton has not satisfied the *Rhines* factors for holding his petition in abeyance.

As an initial matter, Helton has not shown good cause for his failure to exhaust his claims in state court, and the record suggests that he has engaged in dilatory litigation tactics. Indeed,

5

Helton had the opportunity to exhaust all of the issues raised in ground one of his petition in response to his state appellate counsel's no-merit report and no-merit petition for review but failed to do so. Helton asserts that he has good cause for failing to exhaust his claims in state court because the state court would not file his Wis. Stat. § 974.06 motion. Helton claims that on January 18, 2018, he mailed his motion to the Milwaukee County Circuit Court, but the court returned the motion to him in a new envelope on January 29, 2018, without filing it. Despite realizing that the circuit court had not filed his motion, Helton did not attempt to resubmit the motion. More importantly, the fact that Helton waited more than two years after he filed his federal habeas petition to file a Wis. Stat. § 974.06 motion suggests that he intentionally delayed presenting his unexhausted claims to the state courts. He has offered no excuse as to why he waited so long to begin exhausting his unexhausted claims.

In addition, the court has gone through Helton's petition and concludes there is no merit to any of Helton's unexhausted claims. The petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application

of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods*, 135 S. Ct. at 1376 (quoting *Harrington*, 562 U.S. at 103).

All of Helton's unexhausted claims assert that his trial counsel provided ineffective assistance. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) that counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's

7

performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Helton argues that he was rendered ineffective assistance of counsel by his trial counsel's failure to object to various pieces of evidence and the State's characterization of Helton as a liar, impeach certain witnesses, and actively pursue some of Helton's theories. After reviewing the record, the court cannot concluded that trial counsel's conduct falls outside the wide range of constitutionally permissible decisions and trial strategy. Counsel's efforts did not fall below an objective standard of reasonableness under the circumstances. Because Helton's unexhausted claims are plainly meritless, the limited circumstances in which a stay and abeyance are available are not present here.

Although the court could give Helton one final opportunity to amend his petition and proceed only with his exhausted claims, he has already shown an unwillingness to proceed in that fashion. Moreover, granting leave to amend the petition would result in unnecessary delay because even his exhausted claims lack merit. Helton argues that he was denied ineffective assistance of counsel because trial counsel failed to raise a number of defenses under certain Wisconsin statutes. First, Helton asserts trial counsel should have argued that he acted in self-defense or defense of his property. The self-defense statute provides that a person may only use deadly force when he reasonably believes that the use of such force is necessary to prevent imminent death or great bodily harm to himself. Wis. Stat. § 939.48(1). As the Wisconsin Court of Appeals noted, however, there

would be no basis to argue that Helton acted in self-defense of his property because he testified that he was not facing a threat of death or great bodily harm when he shot Smith. *Helton*, 2014 WL 12669354, at *3. As to the defense of his property, Wis. Stat. § 939.49(1) provides

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with the person's property. Only such degree of force or threat thereof may intentionally be used as the actor reasonably believes is necessary to prevent or terminate the interference. It is not reasonable to intentionally use force intended or likely to cause death or great bodily harm for the sole purpose of defense of one's property.

The Court of Appeals explained that, again, there would be no basis to argue that Helton intentionally used force to protect his property because Helton testified that the gun had discharged by accident. *Helton*, 2014 WL 12669354, at *3. Next, Helton asserts that his trial counsel should have raised a claim under Wis. Stat. § 895.62, or the castle doctrine, but the Court of Appeals noted that statute only provides immunity for *civil* liability for use of force in the protection of one's home. Finally, Helton asserts that his counsel should have argued that the common law doctrine of "homicide by misadventure" should apply to his case. The Court of Appeals concluded this doctrine only applies when "a person unfortunately kills another in doing a lawful act without any intent to kill and without criminal negligence." *Id.* at *4. Here, the jury found that Helton acted with criminally reckless conduct. The Court of Appeals found the doctrine could not apply in this case because Helton negligently loaded the shotgun and went looking for an intruder without placing the safety on the gun. *Id.* The state court's resolution of these questions was not unreasonable and does not come close to reaching the federal AEDPA standard for habeas relief.

Helton further asserts that trial counsel was ineffective in not protecting him from the court "stripping citizens of their self defense rights." ECF No. 1 at 20. He also contends that the "reckless

9

statute" is overly broad because it was used to nullify statutes which clearly allow the defense of self and property. But again, Helton's own testimony supports the Court of Appeal's conclusion that Helton was not facing a threat of death or great bodily harm and he did not intentionally use force to protect his property. Accordingly, Helton is not entitled to relief on these meritless claims.

Helton maintains his trial counsel was ineffective because he failed to present medical records to show Helton suffered a minor cardiac event at the time of the shooting, which caused him to stumble, and did not provide him with discovery photographs. The Wisconsin Court of Appeals observed that the trial transcripts showed that Helton's trial counsel decided not to present medical records at trial and concluded that the court would "not second-guess reasoned strategic decisions made by counsel." *Helton*, 2014 WL 12669354, at *4 (citing *Strickland*, 466 U.S. at 689). Helton also argues that his trial counsel failed to offer a ballistics report. The court concluded that presenting this evidence would have been cumulative or not relevant to the central issue of the case, that is, whether Helton acted recklessly or negligently in causing Smith's death. *Id.* The state court's conclusions were reasonable and do not come close to reaching the federal AEDPA standard for habeas relief. I therefore cannot conclude that the state court misapplied *Strickland* in handling these issues. The petition will be dismissed for lack of merit on all claims.

## CONCLUSION

For the reasons given above, the petition is **DENIED**. A certificate of appealability will be denied. I do not believe that reasonable jurists would believe that Helton has made a substantial showing of the denial of a constitutional right.

The Clerk is directed to enter judgment denying the petition and dismissing the action. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit

by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Helton decides to appeal, he should also request the court of appeals to issue a certificate of appealability. Fed. R. App. P. 22(b).

Dated this  12th  day of September, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
